Robert E. HERVEY, Appellant,

v.

TEL–E–LECT, INC., Respondent.

No. 49884.

Supreme Court of Minnesota.

March 14, 1980.

Bloedel, Nelson, Slade, Volstad & Hawkinson and Clifford G. Nelson, Minneapolis, for appellant.

Carlsen, Greiner & Law and Thomas K. Berg, Minneapolis, for respondent.

Heard before ROGOSHESKE, TODD, and YETKA, JJ., and considered and decided by the court en banc.

TODD, Justice.

Robert E. Hervey, acting in his capacity as a sales representative of Powr-Tel, Inc., negotiated a contract between Powr-Tel and Mexican Power Company for the sale of 28 truck mounted utility vehicles. Powr-Tel decided it could not efficiently process the contract, withdrew, and advised Mexican Power Company, Hervey, and Tel-E-Lect of its withdrawal. Tel-E-Lect took over the contract and completed delivery. Hervey sought recovery of a 5-percent commission from Tel-E-Lect. The matter was submitted to the jury on the basis of express and implied contract. A request to submit a quasi-contract instruction was refused. The jury returned a verdict for Hervey. The trial court, in response to a post-trial motion, granted Tel-E-Lect judgment notwithstanding the verdict. We reverse and reinstate the verdict.

Hervey has been a successful businessman in Mexico for many years. At the times material herein, he was an independent sales representative, operating on a commission basis and responsible for his

own expenses. His principal client in 1969 was Powr-Tel, Inc. On its behalf, he submitted a bid to Mexican Power Company for 28 truck mounted units of derricks and associated equipment. Powr-Tel received an order for the 28 units at the contract price of $791,921.12. Powr-Tel's agreement with Hervey provided for payment of a 5-percent commission based on the contract price, less the cost of the truck chassis. In May 1970, Powr-Tel advised Mexican Power Company of its intention to withdraw. Its letter further advised the Mexican company to work directly with Tel-E-Lect, the principal subcontractor, and Hervey to complete the order. On May 16, 1970, Powr-Tel furnished Tel-E-Lect with a copy of its letter of withdrawal. Powr-Tel further suggested a plan devised by Hervey as to how Tel-E-Lect could handle the order, which Powr-Tel believed to be a "workable solution in getting the business for your company and allowing Hervey to be paid for a lot of hard work."

On June 16, 1970, Tel-E-Lect formally assumed responsibility for the original order. In July 1970, it hired a Mexican concern to represent it in completing the delivery of the order, eventually paying it a fee of $50,000. In the ensuing period of time before final delivery of the units, numerous pieces of correspondence passed between Hervey and Tel-E-Lect. It is significant that nowhere in this correspondence did Hervey directly assert a claim for commissions on the sale he had negotiated nor did Tel-E-Lect directly deny any liability to Hervey. During this period, however, Hervey provided assistance to Tel-E-Lect, and, in one instance, he was able to clarify a bonding problem which was costing Tel-E-Lect about $2,000 per month in additional expenses. After completion of the contract, Hervey sued Tel-E-Lect for his 5-percent commission. Uncontradicted evidence was introduced that the commission percentage proposed by Hervey was fair and reasonable and that based on this charge he would be entitled to a commission of $26,262.

The matter was submitted to the jury on the issues of express and implied contract. The trial court denied Hervey's request that the issue of a quasi-contract also be submitted. In response to the first question in the special verdict—"Did plaintiff render services to defendant pursuant to a contract between them?"—the jury answered "Yes." On the issue of damages, the jury determined that the fair and reasonable value of Hervey's services was $26,252.

In response to a post-trial motion, the trial court granted judgment notwithstanding the verdict because the court concluded that the evidence was insufficient to establish the existence of a contract and that the verdict was grossly excessive. The court also provided that if the order for judgment notwithstanding the verdict is reversed on appeal, Tel-E-Lect would be granted a new trial on all issues.

The issues presented are:

(1) Does the evidence justify the jury's finding that there existed a contract between the parties?

(2) Are the damages excessive?

(3) Was it error not to submit the issue of a quasi-contract?

(4) Is a new trial required?

■ 1. The question of whether the evidence supports the jury's finding that a contract existed between the parties is purely a factual one. Neither party challenges the thorough and complete instructions given by the court to the jury on the elements of an express and an implied contract. The trial court's determination that the jury verdict is unjustified is based upon the court's interpretation of the correspondence between the parties. The court ruled that Tel-E-Lect's agents avoided Hervey, never met with him, never asked him to do anything, and made no promises to him. If the evidence conformed to these conclusions, we would agree with the trial court. However, our examination of the record discloses evidence which would, when viewed in a light most favorable to the prevailing party, permit the jury to find an implied contract between the parties.

Of particular importance are two letters from Tel-E-Lect to Hervey. The first, dat-

ed August 4, 1970, is from Tel-E-Lect's sales manager and states in part:

I am sure that he [Tel-E-Lect's export manager] will be in touch with you regarding the units which *you have sold* to the Mexican Power & Light organization. Tel-E-Lect, Powr-Tel and yourself are all mutually concerned about delivering the units they have ordered to this customer as soon as possible. [Emphasis added.]

Coupled with this is the export manager's letter of March 30, 1971, the last line of which states: "Bob, we sincerely appreciate your assistance and will advise you when delivery begins and *final payment is received.*" (Emphasis added.) This indicates that Hervey has an interest in the date of final payment, such as collecting his commission fee, which would normally be due at the time of final payment of the order. Both of these letters indicate that Hervey is no mere outsider to the order. Tel-E-Lect recognized Hervey's interest in completion of the sale and felt the need to keep him informed of the sale's progress. Further, Tel-E-Lect accepted Hervey's advice on how to clear up a bonding problem which had stalled the sale's progress. We conclude that based upon the instructions given, the jury's finding that a contractual agreement existed between the parties is entirely consistent with these facts and the legal principles of implied contract. Thus, we conclude that under the facts of this case the original verdict of the jury should stand on the contractual issue.

2. Tel-E-Lect sought to attack Hervey's claimed damages by showing that Hervey performed fewer hours of work for Tel-E-Lect than he had estimated. It also claimed that Hervey's work had already been paid for in the $50,000 fee Tel-E-Lect paid to a Mexican firm for assistance in completing delivery of the units. The trial court accepted these arguments and concluded that the damage award of $26,252 was excessive as a matter of law. We disagree.

The jury was entitled to accept the uncontradicted testimony that a 5-percent sales commission is reasonable and payable regardless of the amount of time spent or expenses incurred by Hervey in securing the order. The commission is also payable whether or not the contract proves to be profitable. The jury could also properly disregard the $50,000 payment to the Mexican firm when calculating the damage award since at the time Tel-E-Lect took over the contract the bulk of Hervey's services had already been performed. It was his expertise and knowledge of the Mexican situation which permitted the contract to come into being. A decision by Tel-E-Lect to have someone else assist in subsequent matters relating to delivery of the units should not be used to offset Hervey's earned commission. We find the award of damages to be consistent with the evidence.

3. Having decided the issue on the basis of implied contract, we need not discuss the problem raised by the trial court's refusal to give the requested quasi-contract instruction.

4. Having concluded that the award of damages was proper and that the finding of a contractual relationship between the parties was justified by the evidence, there is no basis for the granting of a new trial in this case.

Reversed and remanded with instructions to enter judgment for the plaintiff in conformance with the verdict of the jury.